ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
40 Wall Street Suite 2833
New York, NY 10005
(212) 267-2101
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

CHERILEE ALLMAN and OLIAKU    :
BROWN,

               :

             Plaintiffs,

               :     **Docket No.:**

   -against-

               :     **JURY TRIAL DEMANDED**

APPLE-METRO INC., 42ND APPLE LLC,
ALI DOE, and HASNA DOE,    :

            Defendants.  :

-------------------------------------------------------X

## COMPLAINT

Plaintiffs Cherilee Allman ("Allman") and Oliaku Brown ("Brown")(collectively,

"Plaintiffs"), by their attorneys Robert Wisniewski P.C., as and for their Complaint against

Defendants Apple-Metro Inc., 42nd Apple LLC (collectively, "Corporate Defendants"), Ali Doe

("Ali"), and Hasna Doe ("Hasna") (collectively, "Individual Defendants")(the Corporate Defendants

and the Individual Defendants are collectively referred to as "Defendants"), state as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to recover unpaid wages, unpaid overtime wages, liquidated

damages, damages related to the blatant retaliatory termination of their employment by

Defendants due to Plaintiffs' wage complaints, and reasonable attorneys' fees and costs

under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*)

("FLSA"); Articles 6 and 19, and § 198-b of the New York Labor Law ("NYLL") and

the various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-146.

2.   Furthermore, Plaintiffs assert claims for discrimination and hostile work environment based on race and/or ethnicity under Section 1981 of the Civil rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and for discrimination and hostile work environment based on race, national origin, color, and/or religion against Corporate Defendants under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and against all Defendants under New York Executive Law § 296 ("New York Human Rights Law"), and New York City Administrative Code § 8-107 ("New York City Human Rights Law"),

## PARTIES, JURISDICTION AND VENUE

3.   Plaintiff Allman is a black Christian female of Barbadian national origin who resides in New York State, Kings County.

4.   Plaintiff Brown is a black Christian male of Jamaican national origin who resides in New York State, Kings County.

5.   Plaintiffs are Corporate Defendants' former employees. At all relevant times, Plaintiffs worked as servers and bartenders at Corporate Defendants' Applebee's Restaurant located at 234 W 42nd St, New York City, NY 10036-7215 ("42nd Street Applebee's").

6.   At all relevant times, Corporate Defendant Apple-Metro Inc. has been a domestic business corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business within the State of New York.

7.   At all relevant times, Corporate Defendant 42nd Apple LLC has been a domestic limited liability company duly organized under, and existing by virtue of, the laws of the State of

New York and having its principal place of business within the State of New York; 42nd

Apple LLC is a wholly owned subsidiary of Corporate Defendant Apple-Metro, Inc.

8.     At all relevant times, Individual Defendant Hasna, a light-skinned Muslim female of

Egyptian national origin, served as Supervisor at the 42nd Street Applebee's, had the

authority to set the terms and conditions of Plaintiff's employment, and played a direct role

in all or some of the discriminatory and retaliatory acts as set forth below.

9.     At all relevant times, Individual Defendant Ali, a light-skinned Muslim male of Egyptian

national origin, served as General Manager at the 42nd Street Applebee's, had the authority to

hire and fire, and set the terms and conditions of Plaintiffs' employment, and played a direct

role in all or some of the discriminatory and retaliatory acts as set forth below.

10.     At all relevant times, the Individual Defendants were officers, directors, and/or managers of

the Corporate Defendants.

11.     At all relevant times, Defendants Ali and Hasna aided and abetted in, ratified and condoned,

and/or played a direct role in:

    a.     Subjecting Plaintiffs to inferior and disparate treatment on the basis of Plaintiffs'

        race (African American), color (black), national origin (Barbadian and Jamaican),

        and religion (Christianity);

    b.     Subjecting Plaintiffs to hostile work environment on the basis of Plaintiffs' race

        (African American), color (black), national origin (Barbadian and Jamaican), and

        religion (Christianity); and

    c.      Terminating Plaintiffs' employment for Corporate Defendant based on Plaintiffs' race (African American), color (black), national origin (Barbadian and Jamaican), and religion (Christianity).

12.    At all relevant times, Defendants engaged in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce in that their employees use goods and materials that have been manufactured or produced outside of New York, and Defendants are thus employers subject to the jurisdiction of the FLSA.

13.    At all relevant times, Corporate Defendants employed fifteen (15) or more employees and were Plaintiffs' "employers" within the meaning of that term in Title VII of the Civil Rights Act of 1964", i.e., 42 USC §§ 2000e, et seq., (or "Title VII"), 42 USC §§ 1981 (or "Section 1981), and N.Y. Executive Law §§ 290, et seq., i.e., the NYS Human Rights Law (or the "NYSHRL").

14.    This Court has personal jurisdiction over the Defendants in that they are the citizens and residents of the State of New York.

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA, Section 1981, and Title VII. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.

16.    Venue is proper in this judicial district, pursuant to, among other grounds, 28 U.S.C. §1391(b), because substantial events relating to the claims herein occurred in this district.

### PREREQUISITES

17.     Plaintiffs have each timely filed a Charge of Discrimination with the United States Equal

Employment Opportunity Commission ("EEOC") and are currently awaiting the Notice of

Right to Sue ("Right-to-sue Letter").

### JURY DEMAND

18.     Plaintiffs demand a trial by jury of all issues so triable in this action.

### FACTUAL BACKGROUND

19.     Plaintiffs are former food service employees of Corporate Defendants' 42nd Street

Applebee's located in the Times Square area of Midtown Manhattan.

20.     Privately, Plaintiffs are a couple.

*Facts Relating to Plaintiff Brown's Employment for the Defendants*

21.     Plaintiff Brown was hired by Defendants to work as busser on November 11, 2010.

22.     Approximately one year into his employment, Brown was promoted to a server position and

remained a server until his termination on February 8, 2019.

23.     Defendants structured their food-service employees' schedule into three shifts:

    a.     "Morning" - 1 a.m to 4 p.m.;

    b.     "Afternoon" - 11 a.m. to 7 p.m.; and

    c.     "Late"- 4 p.m. to 1 a.m.

24.     During his first year as a server, Brown generally worked the Morning shift, but as he gained

more experience, Defendants assigned him to the busier Late shift.

25.     Brown regularly worked the Late shift from 3:45 pm to closing, five days per week, until

2018.

26.    In or about January, 2018, due to Defendants' slow season, Brown worked a limited
       schedule of two or three shifts per week.

27.    At all relevant times, Brown's performance of his job duties was more than satisfactory and
       Brown never received any disciplinary action from Defendants.

**Facts Relating to Plaintiff Allman's Employment for the Defendants**

28.    Plaintiff Allman was hired by Defendants to work as a bartender on August 20, 2015.

29.    Throughout her employment, Allman worked the Late shift from 4pm-2/3am, five days per
       week, until 2018.

30.    Additionally, when Defendants were short staffed, Allman occasionally picked-up server
       shifts. Allman worked approximately 15 server shifts during her three-year tenure at the 42nd
       Street Applebee's.

31.    In or about February 2018, due to Defendants' slow season, Defendants reduced Allman's
       schedule to two days per week.

32.    At all relevant times herein, Allman's performance of her job duties was more than
       satisfactory.

**Facts Relating to Defendants' Wage and Hour Violations**

33.    To track employee hours, Defendants maintained a procedure in which employees, including
       Plaintiffs, were required to clock in (or were clocked in by Corporate Defendants' managers)
       at the inception of their shifts, and clock out at the end.

34.    As a server, Brown was scheduled to start work at 3:45 p.m. but Defendants did not allow
       him to clock in until after a staff meeting (the "Directional"). Directionals were held every
       day at 3:45 p.m. and lasted approximately a half hour.

35.    Defendants allowed Brown to clock in or personally clocked him in after Directionals.

6

36.    Defendants also required Brown to keep working after he clocked himself out at the end of the shift. Specifically, Defendants maintained a policy whereby servers like Brown were forced to clock out at the end of the shift before doing their "check out" (calculating all sales and deducting the tip out to other service staff) and side work (collecting silverware from wait stations, waiting for kitchen personnel to run wash them in a dishwashing machine, polishing the silverware, refilling all condiments in their section, and making "roll ups").

37.    Brown worked "off-the-clock" for at least two (2) hours in each shift.

38.    Similarly, Plaintiff Allman, a bartender, often performed work off the clock because Defendants maintained a practice of clocking bartenders out without their knowledge and/or directing bartenders to clock out but continue working.

39.    Allman approximates that during her first two years of employment for Defendants, she performed at least 4 hours of "off the clock" work per week.

40.    As a result of Defendants' policies and practices of forcing Plaintiffs to work "off-the-clock," Defendants failed to compensate Plaintiffs for all of their hours worked and failed to pay them overtime for the hours Plaintiffs worked in excess of 40 hours per week.

41.    Over and above Defendants' wage and hour violations, Defendants also:

    a.    Failed to post a Wage Poster, which would inform employees of their rights to, among others, a minimum wage or advise them of tip-credit wage, thereby extending the statute of limitations on Plaintiffs' wage and hour claims to an unlimited time period;

    b.    Failed to provide Plaintiffs with any meal breaks as required by New York State Law;

c.  Maintained an unreasonable tip pooling policy whereby servers like Brown, were required to hand over to Defendants an amount equal to 3% of all sales in a given shift from customer gratuities resulting; and

d.  Made unlawful deductions from Plaintiffs' wages such that Plaintiffs were forced to reimburse the Corporate Defendant for customer walk outs and whenever customers of 42nd Street Applebee's paid with counterfeit bills.

42.  Allman protested Defendants' unlawful policies and practices on several occasions by orally complaining to managers "Batman" and "Lilly."

43.  In spite of Allman's complaints, Defendants failed to take any action. In fact, on one occasion that Allman complained about being clocked out by Defendants without her knowledge and while still working, Lilly referred to Allamn as a "gold digger."

44.  Shortly thereafter, in retaliation for Allman's complaints and outspoken attitude, Defendants terminated both her and Brown's employment on the same day, February 8, 2019.

***Defendants' Failure to Pay Proper Wages was Willful***

45.  Defendants were aware of the requirement to pay Plaintiffs for each hour worked and at a higher overtime premium of 150% of the regular rate for each hour worked in excess of 40 hours.

46.  Upon information and belief, the Defendants willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain proper and complete payroll records.

47.  The Defendants have willfully and intentionally acted to violate the laws, rules, regulations, statutes and wage orders alleged herein, and by doing so and by virtue of their positions as

shareholders, directors, officers and/or managers of Corporate Defendants have assumed personal liability for the claims of the Plaintiffs herein.

***Corporate Defendants and Individual Defendants are Joint Employers of Plaintiffs***

48.     At all relevant times herein, the Corporate Defendants were and are controlled by the Individual Defendants.

49.     At all relevant times herein, the Individual Defendants conducted business as the Corporate Defendants.

50.     At all relevant times herein, upon information and belief, the Individual Defendants were and still are officers, managers, employees and/or agents of the Corporate Defendants.

51.     The Individual Defendants had control over the conditions of employment of the Plaintiffs, including their hiring and firing, discipline over them, their work schedule, the rate and method of payment of their wages, and the maintenance of their employment records.

52.     At all relevant times herein, the Individual Defendant had operational control over the Corporate Defendants and over the conditions of Plaintiffs' employment.

53.     As a matter of economic reality, all Defendants are joint employers of the Plaintiffs; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

***Facts Relating to Defendants' Discrimination of the Plaintiffs***

54.     Separate and apart from their wage violations, Defendants discriminated against Plaintiffs and subjected them to an environment permeated by severe and pervasive hostility on the basis of Plaintiffs' race, color, national origin, and/or religion.

55.     Plaintiffs are black African American Christians. Allman is of Barbadian national origin; Brown is of Jamaican national origin.

9

56.     Most of the managers, including Ali and Hasna, and many employees at the 42 Street
        Applebee's were light-skinned Muslims of Middle Eastern descent.

57.     At all relevant times, Defendants treated their Muslim employees much better than they
        treated their non-Muslim employees.

58.     Defendants dished out their worst treatment to their non-Muslim black employees.

59.     Defendants regularly manifested their disdain for the Plaintiffs and other non-Muslim black
        employees by, among other things:

        a.      Talking down to them but addressing their light-skinned Muslim counterparts with
                respect and in a friendly manner;

        b.      Directing them to leave the restaurant's premises immediately after the end of their
                scheduled shift, but allowing light-skinned Muslim employees to stay and eat with
                their friends;

        c.      Routinely denying any requests for days off on religious holidays by non-Muslim
                black employees but always granting similar requests to light-skinned Muslim
                employees; and

        d.      Reprimanding non-Muslim black employees  for talking to Defendants' light-skinned
                Muslim proteges;

60.     Moreover, Defendants always expected Plaintiffs to be on their best behavior or be
        disciplined, whilst they rarely, if ever, disciplined light-skinned Muslim employees. For
        example, Defendants allowed Saeed, a light-skinned Muslim bar manager, to work
        intoxicated every night without any repercussion, even though such a transgression would be
        grounds for immediate dismissal for non-Muslim black employees.

61.     Furthermore, Defendants gave preferential treatment to light-skinned Muslims when awarding promotions, and routinely assigned the biggest parties to light-skinned Muslim servers like Rhea, Anifa, and Maha, which allowed those servers to make greater sales and thus, tips.

62.     Most egregiously, Defendants acquiesced in non-black Muslim employees' refusal to serve black customers, and black customers were usually assigned to black service staff like the Plaintiffs.

63.     Defendants' discriminatory conduct altered the terms of Plaintiffs' employment and made them feel inferior, unwelcome, and humiliated.

*Facts Relating to Plaintiffs' Termination*

64.     On or about June 2018, Ali, Corporate Defendants' General Manager, promoted Hasna, a light-skinned Muslim hostess, to the position of a supervisor, even though other employees were more qualified for the position due to their experience and longer tenure at the 42nd Street Applebee's.

65.     Upon information and belief, when Hasna received the promotion she remarked, "If I hated you as a hostess, you are in trouble now that I am manager."

66.     When Hasna became a manager, Hasna began to target the outspoken Allman. Hasna regularly verbally abused Allman in front of the restaurant's customers, refused to help Allman with transactions requiring the use of her manager card, and hounded Allman with false write ups.

67.     Specifically, on two occasions, Hasna falsely accused Allman of causing a customer walk-out and of attempting to steal food from the restaurant.

68.     On February 8, 2019, Allman reported to work at her usual shift time of 4 p.m.

11

69.   Upon arrival, Allman was then called to Ali's office for a meeting.

70.   Ali began to interrogate Allman regarding an array of issues that were brought to his

attention by Hasna.

71.   Ali questioned Allman regarding her unwillingness and ultimate refusal to sign write ups

issued to her by Hasna, and additionally accused Allman of violating Applebee's policy of

no cellphone use.

72.   Allman categorically denied all of Ali's allegations and attempted to explain to Ali that the

write-ups were false and that she did not violate the cellphone policy.

73.   To no avail, Ali refused to listen to Allman and against all reason, terminated Allman at the

end of the meeting.

74.   That same day, Brown received a text message from another employee of the Defendants,

stating that Defendants did not wish for him to come back to work either.

75.   Defendants terminated Plaintiffs solely on account of their race, national origin, color, and/or

religion and Allman's outspoken opposition to Defendants' wage and hour violations.

76.   As a result of Defendants' unlawful discriminatory acts,  Plaintiffs have and will likely

continue to suffer significant economic consequences, including lost back and front wages,

loss of self-esteem, emotional distress, damage to Plaintiffs' good name and reputation,

lasting embarrassment, humiliation and anguish, and other incidental and consequential

damages and expenses.

77.   Defendants' unlawful harassment and retaliatory acts against Plaintiffs were intentional and

in violation of Section 1981, Title VII, NYSHL and the NYCHRL.

78.   Defendants' actions were outrageous, malicious and wanton, and were done with reckless indifference to Plaintiffs' protected civil rights and must be punished and deterred through an award of significant punitive damages.

## FIRST CLAIM OF RELIEF
### (Unpaid Wages and Overtime under the FLSA)
**Against All Defendants**

79.   Plaintiffs repeat and reallege each and every allegation previously set forth.

80.   Plaintiffs are persons covered by, and intended to benefit from, the provisions of the FLSA in respect to their work for Defendants.

81.   Pursuant to the FLSA, Plaintiffs were entitled to certain wages, which Defendants intentionally and willfully failed to pay in violation of such law.

82.   Accordingly, Plaintiffs seek a judgment for unpaid wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiffs, along with an award of liquidated damages, interest, reasonable attorneys' fees and costs, as provided for by the FLSA.

## SECOND CLAIM FOR RELIEF
### (FLSA Retaliation)
**Against All Defendants**

83.   Plaintiffs repeat and reallege each and every allegation previously set forth.

84.   Defendants willfully and intentionally retaliated against Plaintiffs for complaining that they were not properly paid under the FLSA.

85.   In committing the above mentioned acts, the Defendants have penalized and discriminated against Plaintiffs because they complained that Defendants failed to pay them properly for

each hour worked under the FLSA in violation of 29 U.S.C. § 215 (a)(3) and the Plaintiffs

have been damaged therefrom.

**THIRD CLAIM FOR RELIEF**
**(Unpaid Wages and Overtime under the NYLL)**
**Against All Defendants**

86.    Plaintiffs repeat and reallege each and every allegation previously set forth.

87.    Pursuant to the New York Labor Law and the Wage Orders issued under the New York

Labor Law at 12 N.Y.C.R.R. §§ 137-143, Plaintiffs were entitled to be paid for all hours

they worked and to be paid overtime wages, which Defendants intentionally failed to pay in

violation of such laws and wage orders.

88.    Plaintiffs regularly worked more hours than the hours for which they were paid but were not

paid for all hours worked at the regular rate or at any premium rate for work in excess of

forty hours per week.

89.    Accordingly, Plaintiffs seek a judgment against Defendants for all wages which should have

been paid, but were not paid, pursuant to the New York Labor Law and the Wage Orders

issued thereunder and the other provisions of the New York Labor Law; the total amount of

such unpaid wages to be determined at trial upon an accounting of the hours worked by, and

wages paid to Plaintiffs, in addition to an award of attorneys' fees, interest and costs.

**FOURTH CLAIM FOR RELIEF**
**(NYLL Retaliation)**
**Against All Defendants**

90.    Plaintiffs repeat and reallege each and every allegation previously set forth.

14

91.    Defendants willfully and intentionally retaliated against Plaintiffs for complaining that they were not properly paid under New York Labor Laws, and that they were not paid in a timely manner.

92.    In committing the above mentioned acts, the Defendants have penalized and discriminated against Plaintiffs in violation of Section 215 of the New York Labor Law because they complained that Defendants failed to pay them properly, and that they were not paid in a timely manner under New York Labor Laws and the Plaintiffs have been damaged therefrom.

93.    Plaintiffs seek, on this claim for relief, reinstatement to their former position, payment of lost compensation, damages and reasonable attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
### (Unlawful Deductions under NYLL)
### Against All Defendants

94.    Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

95.    Under Section 193 of the New York Labor Law , "[n]o employer shall make any deduction from the wages of an employee, except deductions which . . . are expressly authorized in writing by the employee and are for the benefit of the employee."

96.    Defendants repeatedly made unlawful and improper deductions for charges incurred by Defendants as a result of customer walk-outs and customer use of counterfeit bills from Plaintiffs' wages in violation of Section 193.

97.    Plaintiffs did not agree in writing to any of these deductions.

98.    None of these deductions were made for the benefit of Plaintiffs.

99. As a result of the foregoing, Plaintiffs have been damaged, and seek a judgment in an amount to be determined at trial, together with attorneys' fees, interests, and costs, as provided under the NYLL.

**SIXTH CLAIM FOR RELIEF**
**(Unreasonable Tip Pool under 12 NYCRR 146 )**
**Against All Defendants**

100. Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

101. Hospitality Industry Wage Order codified in Part 146 of Title 12 of the Official Compilation of Codes, Rules, and Regulations of the State of New York,  provides that "Employers may not require directly tipped employees to contribute a greater percentage of their tips to indirectly tipped employees through tip sharing or tip pooling than is customary and reasonable." 12 NYCRR 146-2.14.(f).

102. Defendants maintained an unreasonable tip pooling policy in violation of the Hospitality Industry Wage Order whereby in any given shift, each server was required to contribute to Defendants' tip pool an amount equal to 3% of Defendants' total sales in that shift, regardless of the actual amount of customer gratuities that the server made in that particular shift.

103. As a result of the foregoing, Plaintiffs have been damaged, and seek a judgment in an amount to be determined at trial, together with attorneys' fees, interests, and costs, as provided under the statute.

**[No More Text On This Page]**

## SEVENTH CLAIM FOR RELIEF
### (Discrimination and Hostile Work Environment Based on Race and Ethnicity Under Section 1981)
### Against All Defendants

104.    Plaintiffs repeat and reallege each and every allegation previously set forth.

105.    Section 1981 Of the Civil rights Act of 1866, provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts … as is enjoyed by white citizens …" This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, and has been interpreted to prohibit race discrimination in hiring and employment.

106.    Defendants discriminated against Plaintiffs by treating them differently and less favorably than their light-skilled Muslim workers and by subjecting them to inferior conditions of employment and selective disciplinary procedures, including termination of Plaintiffs' employment because of their race, color, and/or national origin in violation of Section 1981.

107.    This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a practice that has a disparate impact on black non-Muslim employees.

108.    By virtue of the acts complained of herein, the hostile work environment at Corporate Defendants' Applebee's was sufficiently severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create a subjectively and objectively abusive/discriminatory work environment.

109.    As a result of Defendants' discrimination, Plaintiffs suffered and continue to suffer damages,

17

including but not limited to lost income, mental anguish, and pain and suffering.

110.    Plaintiffs are also entitled to an award of punitive damages, attorney's fees, and costs

because Defendants' unlawful and discriminatory actions constitute malicious, willful and

wanton violations of Section 1981.


## EIGHTH CLAIM OF RELIEF
### (Discrimination and Hostile Work Environment Based on Race, National Origin, Color, and/or Religion Under Title VII)
### Against the Corporate Defendants

111.    Plaintiffs repeat and reallege each and every allegation previously set forth.

112.    When employed by Defendants, Plaintiffs were employees within the meaning of Section

2000e(f) of Title VII.

113.    The Corporate Defendants were employers within the meaning of Section 2000(e)(b) of Title

VII.

114.    Section 2000e-2(a) of Title VII makes in unlawful for an employer "to discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of

employment because of such individual's ...race, national origin, color, and/or religion."

115.    The Corporate Defendants through their owners, directors, officers, managers and

employees, engaged in discrimination on the basis of national origin sufficient to alter the

terms and conditions of Plaintiffs' employment.

116.    The Corporate Defendants discriminated against Plaintiffs by consistently subjecting them to

inferior conditions of employment and selective disciplinary procedures, including

termination of Plainitffs' employment because of their race, color, and/or national origin in

violation of Title VII.

18

117. By virtue of the acts complained of herein, the hostile work environment at Corporate Defendants' 42nd Street Applebee's was sufficiently severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create a subjectively and objectively abusive/discriminatory work environment.

118. The Corporate Defendants are liable for the discrimination against Plaintiffs because it was created and fostered by their owners, directors, officers, managers, and/or because the Corporate Defendants did not take adequate steps to prevent or address instances of national origin discrimination.

119. Said discrimination occurred with malice and reckless disregard of Plaintiffs' rights.

120. As a result of Corporate Defendants' discrimination, Plaintiffs suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon. Plaintiffs are also entitled to punitive damages, attorney's fees and costs.

### NINTH CLAIM FOR RELIEF
### (Discrimination and Hostile Work Environment Based on Race, National Origin, Color, and/or Religion under New York Human Rights Law)
### Against All Defendants

121. Plaintiff repeats and realleges each and every allegation previously set forth.

122. New York Executive Law § 296 (1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's ...national origin . . ..to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

123. Defendants discriminated against Plaintiffs by consistently subjecting them to inferior conditions of employment and selective disciplinary procedures, including termination of

Plainitffs' employment because of their race, color, and/or national origin in violation of

NYSHRL.

124.   This discrimination was a result of intentional actions by Defendants, deliberate indifference

by Defendants, and/or the result of Defendants maintaining a practice that has a disparate

impact on black non-Muslim employees.

125.   By virtue of the acts complained of herein, the hostile work environment at Corporate

Defendants' 42nd Street Applebee's was sufficiently severe and pervasive to alter the terms

and conditions of Plaintiffs' employment and create a subjectively and objectively

abusive/discriminatory work environment.

126.   Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid,

abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to

attempt to do so."

127.   Individual Defendants engaged, and continue to engage in unlawful discriminatory practices

in violation of the New York Executive Law § 296 (6) by aiding, abetting, inciting,

compelling and coercing the above discriminatory conduct.

128.   As a result of Defendants' discrimination, Plaintiffs suffered and continue to suffer damages,

including but not limited to lost income, mental anguish, and pain and suffering.

## TENTH CLAIM FOR RELIEF
### (Discrimination and Hostile Work Environment Based on Race, National Origin, Color, and/or Religion under New York City Human Rights Law)
### Against All Defendants

129.   Plaintiffs repeat and reallege each and every allegation previously set forth.

130.   The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful

discriminatory practice: (a) For an employer or an employee or agent thereof, because of the

actual or perceived. . . .national origin . .to refuse to hire or employ or to bar or to discharge form employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

131.   Defendants discriminated against Plaintiffs by consistently subjecting them to inferior conditions of employment and selective disciplinary procedures, including termination of Plainitffs' employment because of their race, color, and/or national origin in violation of NYCHRL.

132.   This discrimination was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants maintaining a practice that has a disparate impact on black non-Muslim employees.

133.   By virtue of the acts complained of herein, the hostile work environment at Corporate Defendants' 42nd Street Applebee's was sufficiently severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create a subjectively and objectively abusive/discriminatory work environment.

134.   The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

135.   Individual Defendants engaged, and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

136.   As a result of Defendants' discrimination, Plaintiffs suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering. They are also entitled to punitive damages, attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

A.      A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.      An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including liquidated damages pursuant to FLSA and New York Labor Law;

C.      An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D.      An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for harm to their professional and personal reputations and loss of career fulfillment;

E.      An award of punitive damages; and

## **[No More Text On This Page]**

F.    An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs'

reasonable attorneys' fees to the fullest extent permitted by law.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
        February 2, 2020

ROBERT WISNIEWSKI P.C.

By: _____
Robert Wisniewski
*Attorneys for Plaintiffs*
40 Wall Street Suite 2833
New York, New York 10005
(212) 267-2101